```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION

ARTHUR HOLT,                       :

     Plaintiff,                    :

vs.                                :   CIVIL ACTION 11-0704-KD-M

LEON DAILEY, CYNTHIA WHITE,        :

     Defendants.                   :
```

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' motion for summary judgment (Docs. 20, 21). For the reasons stated below, it is recommended that Defendants' motion for summary judgment be granted and that Plaintiff's action be dismissed with prejudice.

I. SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

From its review of the record, the Court summarizes the procedural history and the parties' allegations that are material to the issues addressed in this Report and Recommendation. On or about August 30, 2011, while incarcerated in the Fountain/ J.O. Davis Correctional Facility ("Fountain"), Plaintiff was ordered by Correctional Officer Abston to stop

walking so that he could be searched for a pat down (Doc. 1, p. 8; Doc. 21-2, p. 2).  Plaintiff disobeyed the order and did not stop because he had a cell phone battery in his possession (Doc. 1, p. 8).  Plaintiff started running, and discarded the battery (Doc. 1, p. 8; Doc. 21-2, p. 2).  Defendant Correctional Officer Leon Dailey ("Dailey") saw the incident between Plaintiff and Correctional Officer Abston and approached Plaintiff (Doc. 21-1, p. 2).  Defendant Dailey ordered Plaintiff to be handcuffed, but Plaintiff did not comply (Doc. 21-1, pp. 2, 7).  Plaintiff pulled away from Defendant Dailey and in turn Dailey grabbed Plaintiff's arm (Doc. 21-1, p. 2).  Defendant Dailey gave a second order to Plaintiff to be handcuffed (Doc. 21-1, p. 2).  Plaintiff complied with the second order to be handcuffed (Doc. 21-1, p. 2; Doc. 1, p. 8).  While being handcuffed, Dailey's private parts touched Plaintiff's buttox area (Doc. 1, p. 4).  Plaintiff was escorted to the lobby and was ordered to sit down by Defendant Dailey (Doc. 21-1, p. 2).  Plaintiff did not obey the order to sit down and in turn Defendant Dailey attempted to force Plaintiff to sit down (Doc. 21-2, pp. 2, 7).  In turn, Plaintiff shoved and kicked Defendant Dailey (Doc. 21-2, pp. 2, 7).  In response to Plaintiff's shoving and kicking, Defendant Dailey struck Plaintiff on the right calf twice with a baton (Doc. 21-1, pp. 2, 7; Doc. 1).  Plaintiff got up and fell over a bucket filled with water, slipped and hit his head on the office

table in the lobby (Doc. 21-1, pp. 2, 7). Officer Abston helped Plaintiff to his feet and then Correctional Captain Wayne Gray arrived (Doc. 21-1, p. 2). Correctional Captain Wayne Gray instructed Defendant Dailey to leave in order to diffuse the scene (Doc. 21-1, p. 2).

Plaintiff claims he complained to Defendant Warden Cynthia White ("Defendant White") about this incident and claimed it was a sexual assault (Doc. 1, p. 4), but Defendant White denies this occurred (Doc. 21-2, p. 1). Plaintiff was treated for a one-inch laceration on his forehead and steri-strips were applied (Doc. 21-2, p. 32). Later an investigation was conducted, and it was determined that Defendant Dailey's use of force was justified (*see* Doc. 21-1).

Plaintiff filed his Complaint on December 9, 2011 wherein Plaintiff alleges that Defendant Dailey used excessive force and committed sexual assault, and alleges that Defendant Cynthia White committed negligence and conspired to cover up an assault (Doc. 1, p. 5). Plaintiff requests that both Defendants be fired and that an order be issued that Defendant not be harmed in seeking this legal action (Doc. 1, p. 7).[1]

---

[1] Plaintiff filed a Motion to Amend his Complaint requesting that the damages amount be amended to $100,000.00 (Doc. 26). However, this motion is deemed **MOOT** if this Report and Recommendation is adopted.

On July 20, 201, Defendants filed an Answer and Special Report denying Plaintiff's claims and asserting affirmative defenses[2] (Docs. 20, 21).

On July 25, 2012 the Court ordered that Defendant's Special Report and Answer be treated as a motion for summary judgment (Doc. 22). On September 24, 2012, Plaintiff filed his Response (Doc. 25).[3] Plaintiff's pleadings and Defendants' motion are now before the Court.

## II.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  It is well-established that summary judgment is proper-consistent with Federal Rule of Civil Procedure 56(c)-"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] Defendants set forth various immunities as affirmative defenses. However, since the Court finds herein that Plaintiff's allegations do not establish a constitutional violation, there is no need to make further inquiry as to immunity.

[3] Plaintiff asserts in his Response that "defendant did not address or refute his allegations of sexual abuse" (Doc. 25, pp. 1-2).  However, both Defendants refute Plaintiff's allegations of sexual abuse in their Answer (Doc. 20).  Specifically, Defendant Dailey states that he "denies sexually harassing the Plaintiff" (Doc. 20, p. 1).

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> > (2) consider the fact undisputed for purposes of the motion;
> > (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an

5

element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III.  DISCUSSION

As set forth above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of an incident that occurred on August 30, 2011, while Plaintiff was incarcerated in Fountain.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

As discussed above, Plaintiff claims that Defendant Dailey used excessive force by hitting Plaintiff with a baton and that Defendant Dailey sexually assaulted Plaintiff while handcuffing him, which the Court construes to mean that the Plaintiff claims Eighth Amendment violations (Doc. 1, pp. 4-12).  Also, the Court construes Plaintiff's claims of conspiracy and negligence

against Defendant White to mean that the Plaintiff claims Eighth Amendment violations as well (Doc. 1, p. 5-12).

The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification . . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8 (1992). In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are as follows: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the

7

extent of injury suffered. *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

> When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into actual unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra*, 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their *322 judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S., at 547, 99 S.Ct., at 1878.

*Whitley*, 475 U.S. 312, 321.

In regards to sexual assault, "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006). "'[S]exual abuse of a prisoner by a corrections officer has no legitimate penalogical purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citation and quotation omitted). The determination of whether a prison official's sexual abuse of a prisoner constitutes an Eighth Amendment violation requires a two-part inquiry. The first inquiry is the objective component, "which requires that the injury be 'objectively, sufficiently serious.'" *Id.* (quoting *Boddie*, 105 F.3d at 861). For example,

8

it has been held that a prisoner's allegations that he was "verbally harassed, touched, and pressed against without his consent" were insufficient to satisfy the objective element of his attempted § 1983 sexual abuse claim. *Boddie*, 105 F.3d at 861.  The second inquiry is the subjective component, "which requires the prison official [to] have a sufficiently culpable state of mind." *Id.* (quotations omitted).

In regards to a claim of conspiracy, a prima facie case of conspiracy under § 1983 requires (1) a violation of the plaintiff's federal rights and (2) an agreement among the defendants to violate those rights.  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) citing to *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).  To prove the existence of an agreement on the part of the defendants, a plaintiff need not produce a "smoking gun;" instead, "nothing more than an 'understanding' and 'willful participation' ... is necessary to show the kind of joint action that will subject ... parties to § 1983 liability." *Bendiburg*, 909 F.2d at 469.

As to a claim of negligence against Defendant White, it is not clear from Plaintiff's Complaint in exactly what way Plaintiff claims Defendant White was negligent.  Plaintiff's Complaint states that when Plaintiff "told [her] about the incident[,] she told [him that he] should not have been 'running

9

[his] mouth' and she would hide [him] in segregation if [he] didn't 'let these assaults go'" and that she did not allow the sexual assault incident upon Plaintiff come under investigation (Doc. 1, pp. 5, 9). The Court construes Plaintiff's claim to mean that Defendant White negligently investigated this incident. A "plaintiff seeking relief under § 1983 must establish that the defendant took a 'deliberate action' towards violating the plaintiff's constitutional rights." *Davis v. Broward County, Fla.*, 2012 WL 279433, *7 (S.D. Fla. Jan. 31, 2012) citing *Williams v. City of Albany*, 936 F.2d 1256, 1261 (11th Cir. 1991). "Negligent investigation is not a valid cause of action under § 1983 because negligence is not a deliberate act." *Id*.

The first question for the Court, then, is whether, under the circumstances of this case, a jury could reasonably conclude that Plaintiff's rights under the Eighth Amendment were violated during the incident on August 30, 2011. The Court answers that question in the negative.

The following facts are undisputed, specifically by Plaintiff in response to Defendant's evidence[4], in conjunction with the facts set forth in the Complaint: (1) Plaintiff ran

---

[4] Plaintiff's response does not set out any new facts nor dispute any of Defendants' actual facts set forth, but merely inaccurately states that a "defendant did not address or refute [his] allegations of sexual abuse" (*see* Doc. 25).

10

away from an officer and refused to be pat searched; (2) Plaintiff threw away the cell phone battery he had in his possession and ignored a first order to be handcuffed; (3) Defendant Dailey in response grabbed Plaintiff's arm and gave a second order to Plaintiff to be handcuffed; (4) Plaintiff followed the second order and was handcuffed, and at that time Plaintiff's back area was touched by Defendant Dailey in the course of handcuffing; (5) Defendant Dailey took Plaintiff to the lobby and ordered Plaintiff to sit; (6) Plaintiff refused to sit and instead shoved and kicked Defendant Dailey; (7) in response, Defendant Dailey struck Plaintiff on the right calf twice with a baton; (8) Plaintiff fell over a bucket filled with water, slipped and head his head on the office table in the lobby; (9) Officer Abston helped Plaintiff to his feet and then Correctional Captain Wayne Gray arrived on the scene and instructed Defendant Dailey to leave in order to diffuse the scene (10) Plaintiff was treated for a one-inch laceration on his forehead and steri-strips were applied; and (11) an investigation was conducted regarding the incident, and it was determined that Defendant Dailey's use of force was justified (Docs. 1, 21, 21-1, 21-2, 21-3).

**Defendant Dailey**

    **1. Excessive Force**

To determine whether there was an Eighth Amendment violation, the Court will evaluate the following: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *See Hudson*, 503 U.S. at 7.

First, the Court turns to whether there was a need for the application of force.  In this instance, Defendant applied force to make Plaintiff sit down since Plaintiff refused to follow his reasonable requests, which were given to maintain prison order and comply with the rules.  Additionally, Plaintiff ran away from an officer and continued to defy Defendant Dailey even after being given multiple orders to submit himself to be handcuffed and to sit, which escalated the overall situation to one of hostility (*see* Doc. 1, p. 8; Doc. 21-1).  Moreover, Plaintiff kicked and shoved Defendant Dailey, and in response to these acts of physical violence, Defendant Dailey struck Plaintiff with his baton (*see* Doc. 21-1).  Therefore, due to Plaintiff's behavior, Defendant Dailey needed to apply some force to make Plaintiff comply with the reasonable orders given to him, as well as to stop Plaintiff's violent physical behavior.

Second, the Court looks at the relationship between the need and the amount of force used. The amount of force used was

to strike Plaintiff on his calf twice with the baton, but this action was in response to Plaintiff becoming violent towards Defendant Dailey (Doc. 21-1).  The order to sit was given, seemingly, to keep the prison routine in place and to maintain control over the disorderly Plaintiff who had escalated the situation with purposeful defiance of a reasonable orders (*see* Doc. 21-1; Doc. 1).  Thus, there was a direct relationship between the force used by Defendant Dailey and the need to have Plaintiff under control.

   Third, the Court looks at the threat reasonably perceived. The Court finds that Defendant reasonably perceived Plaintiff as a threat in that Plaintiff's behavior disrupted the prison order, purposefully attempted to be unruly, and was physically aggressive (Doc. 21-2).  Plaintiff's resistant and physically aggressive behavior demonstrates that Plaintiff may have intended to escalate the situation to a hostile one (*see* Doc. 21-1).  Also, as undisputed by the Plaintiff, Plaintiff himself caused the problem since he ignored Defendant's reasonable order and used physical violence by kicking and shoving Defendant Daily first (*see* Docs. 1, 25).

   Fourth, efforts were made by Defendant Dailey to temper the severity of the forceful response.  Defendant Dailey told Plaintiff to sit, but instead Plaintiff kicked and shoved

Defendant Dailey (Doc. 21-1). Defendant used force merely in response to Plaintiff's defiant and aggressive actions.

Fifth, the injury suffered by Plaintiff was a laceration to his head (Doc. 21-2, p. 32). However, there is no evidence that Defendant's actions directly caused Plaintiff's injury. Rather, Plaintiff slipped over a bucket and hit his head. Even if Defendant Dailey's baton strike caused Plaintiff to slip over the bucket, Defendant Dailey struck Plaintiff because Plaintiff ignored his order and became physically aggressive by kicking Defendant Dailey. There is no noted injury in the medical record of Plaintiff sustaining an injury to his calf as a result of this incident (*see* Doc. 21-2).

The Court cannot and does not condone physical force used against prisoners if designed for the purpose of causing "unnecessary and wanton infliction of pain." *Ort*, 813 F.2d at 321. At the same time, the Court is keenly aware that prison officials must maintain order and discipline "in an often dangerous and unruly environment." *Ort*, 813 F.2d at 321-22. Prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution. *Id.* "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security

14

purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 323. In this instance, the Court finds that Defendant Dailey did not use any excessive force on Plaintiff to wantonly inflict unnecessary pain, but merely to maintain order in the prison and over the unruly Plaintiff who himself had created a hostile situation.

### 2. Sexual Assault

The only fact in support of Plaintiff's claim of sexual assault is the touching of Plaintiff's buttox by Defendant Dailey with Defendant Dailey's private area (Doc. 1, p. 4). The Court first looks to see whether the injury was objectively, sufficiently serious. *Boxer X*, 437 F.3d at 1111. Here, Plaintiff does not claim any physical injury at all, but rather that touching occurred in the course of handcuffing. However, touching and or being pressed against does not satisfy the objective element. *See Boddie*, 105 F.3d at 861. Therefore, even taking as true Plaintiff's facts that unwanted touching occurred in the course of being handcuffed, these facts do not give rise to a sexual assault that violates Plaintiff's Eighth Amendment constitutional rights.

### Defendant White

### 1. Conspiracy

In regards to the claim of conspiracy against Defendant White, a prima facie case of conspiracy under § 1983 requires

(1) a violation of the plaintiff's federal rights and (2) an agreement among the defendants to violate those rights. *See Grider,* 618 F.3d at 1260 citing *Bendiburg*, 909 F.2d at 468. However, as discussed above, there has been no violation of Plaintiff's federal rights since there was no excessive force used upon Plaintiff and no sexual assault. Therefore, Plaintiff's claim of conspiracy against Defendant White fails.

### 2. Negligent Investigation

A "plaintiff seeking relief under § 1983 must establish that the defendant took a 'deliberate action' towards violating the plaintiff's constitutional rights." *Davis,* 2012 WL 279433, at *7 citing *Williams*, 936 F.2d at 1261. "Negligent investigation is not a valid cause of action under § 1983 because negligence is not a deliberate act." *Id*. Therefore, Plaintiff's cause of action of negligent investigation, or even negligence in general, is by definition not a valid cause of action under § 1983. Additionally, Defendant White refutes the facts set out by Plaintiff, which in turn was not disputed by Plaintiff in his Response (*see* Docs. 20, 21-1, 25). More specifically, an investigation did occur regarding the incident that occurred on August 30, 2011 (*see* Doc. 21-1). Therefore, Plaintiff's claim of negligent investigation, or even negligence, against Defendant White fails. Since Plaintiff's

claims against Defendant White fail, the action against her should be dismissed.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that Defendant Correctional Officer Leon Dailey and Defendant Cynthia White are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' motion for summary judgment be granted and that the entirety of Plaintiff's Complaint against Defendants be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 1st day of October, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. ' 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of

17

the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. ' 636(b)(1)(A), by filing a >Statement of Objection to Magistrate Judge=s Recommendation= within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. ' 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  *Fed. R. Civ. P.* 72(b)(2).